IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TONY F. DEVAUGHN, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 07-AR-1922-S |
| } | |
| OGIHARA AMERICA CORP., } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Tony F. DeVaughn ("DeVaughn"), sues his former employer, Ogihara America Corp. ("Ogihara"), claiming that Ogihara discriminated against him on the basis of race in violation of 42 U.S.C. § 1981, and retaliated against him in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). The court has before it Ogihara's motion for summary judgment, to which DeVaughn has filed no response. For the reasons that follow, Ogihara's motion for summary judgment will be partially granted and partially denied.

**FACTS**[1]

---

[1]   In accordance with Fed. R. Civ. P. 56(c), the narrative statement of facts includes facts that are undisputed by the parties, and where there is a dispute, the facts are presented in the light most favorable to the non-moving party. The application of this rule is complicated when the non-moving party files no response to movant's rendition of the material undisputed facts. How much responsibility does the court have, without any help from the non-movant, to discover disputes of material fact? "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). Thereafter, the burden shifts to the non-movant to

1

Ogihara hired DeVaughn, who is black, in November of 1994. DeVaughn was an Ultrasound Destruct Technician ("UDT"), who was expected to perform the following tasks: remove a pre-specified part from the line; take off the part's scrap tag; check the spot weld's integrity by performing either a destruct or an ultrasonic test; record his finding on a white board and in the computer system; and throw the tested part into something called the "hopper," without regard to whether it had failed or passed the test. By visual inspection it could be determined whether a part had been tested.

In Count One, DeVaughn charges that Ogihara fired him because of his race. In Count Two, alternatively, he claims that he was fired in retaliation for his insistence on his rights under the FMLA. He never alleges that the two perceived prohibited motivations were interconnected. The events giving rise to DeVaughn's termination, and the termination itself, occurred on October 21, 2005. On that day, DeVaughn was operating in the Destruct Room with another UDT, Mike Burrell ("Burrell"). Burrell is black. DeVaughn observed Burrell throwing two un-tested "B-Pillars" into the hopper. DeVaughn fully understood that placing a part in the hopper meant that the welds on that part had been tested. One of DeVaughn's superiors, Robert Tuttle, who is white, entered the Destruct Room and questioned whether the B-Pillars in the hopper had passed the

---

produce evidence to rebut this showing. *See Celotex,* 477 U.S. at 324, 106 S. Ct. at 2553.

test. Although he knew that they had not been tested, DeVaughn said that they had passed the test. Tuttle then pulled the B-Pillars from the hopper, observing that they had not been tested as DeVaughn had represented them to be. When questioned further, DeVaughn responded that there had been a mistake. Later, however, he admitted something to the effect of: "We were behind.  Mike threw them in the hopper trying to get us caught up."[2] DeVaughn was called before Tuttle and Anessa Goodman from Human Resources and charged with making a false statement, after which he was terminated. DeVaughn appealed his dismissal to a disciplinary committee, as he had a right to do, but it upheld his termination. Burrell, who was also subject to the discipline of termination for his transgression, resigned when he was given the option.

DeVaughn avers that Ogihara allows and condones race discrimination throughout its facilities. He does not attempt to state a claim based on hostile racial environment. In elaboration of this claim of racially discriminatory conduct aimed specifically at him, DeVaughn alleges that Norman Burgess, who is a white UDT, was caught discarding parts that had not yet been completely "destructed" and, although disciplined, was not terminated. DeVaughn does not dispute the fact that Burgess and he had different

---

[2] Compl. ¶ 18. DeVaughn later gave a written statement regarding the incident which said as follows: "Two B-Pillars were discarded to more quickly finish destructing A.M. parts so that U.T. would not fall too far behind because of personell (sic) shortage."

facilitators and that Burgess was, in fact, reprimanded for discarding parts that had not been completely destructed. Burgess was never accused of giving a false statement, which is the reason Ogihara gave DeVaughn and gives this court for DeVaughn's termination, and a reason for which a factual basis clearly existed, whether or not confirmed by the disciplinary committee. First, DeVaughn admits to a lack of knowledge as to what Burgess told his facilitator when he was questioned about his discarding incident. Second, DeVaughn claims that team leader Jim Webber, who is white, regularly discarded parts to be destructed prior to actually destructing them, and encouraged employees to do the same if they got behind, but his claim has a hearsay component and does not include any proof that management knew of and condoned Webber's conduct. Third, DeVaughn says that he had never been written up or faced discipline prior to the incident that led to his termination.[3] Fourth, DeVaughn says that some black employees were passed over for jobs in favor of white employees, but he has no knowledge of specific instances of such behavior. Finally, DeVaughn recounts conversations that took place between him and Tuttle, before Tuttle moved into a supervisory position, regarding military and racial issues upon which they disagreed. DeVaughn never lodged a complaint about these disagreements. If DeVaughn had alleged a hostile racial

---

[3] DeVaughn did acknowledge during his deposition that he violated Ogihara's Code of Conduct in 2002 when he had a positive drug screen. *See* Plt. Depo. 75:1-75:23. When given the choice of a three-day suspension or use of the employee assistance program DeVaughn chose the latter. *See id.*

4

environment these incidents would not have supported the allegation.

In Count Two, DeVaughn alleges that he was retaliated against for exercising his rights under the FMLA. While employed, DeVaughn attempted to take FMLA leave twice. In June of 2005, he injured his back on the job and took ten days of leave. Upon returning to work, he provided the required medical certification from his treating physician, whereupon his request for FMLA leave was routinely approved. On October 11, 2005, he took one day of leave to care for his wife who had an outpatient stomach procedure. On October 18, 2005, he was told that his paperwork was deficient, and the day of leave was counted against his attendance points. While DeVaughn concedes that no one told him he was being terminated for poor attendance or misusing leave, he complains that he was retaliated against in the form of termination for his taking, or attempting to take, FMLA leave. In support of this charge, DeVaughn points to an incident where another black employee was passed over for a position after a return from FMLA leave. However, DeVaughn has no knowledge of the particulars of his fellow employee's FMLA leave, and offers the testimony of no one with such knowledge. The only real evidence of FMLA retaliation is that the decision-makers, by logical inference from their non-denial, knew about his FMLA leave taking and fired him within three days after he was denied FMLA leave.

## ANALYSIS

*Which theory is DeVaughn relying on?*

This case is a classic example of the problem that inheres in a complaint based upon one alleged adverse employment decision that has alternative proscribed motivations. DeVaughn does not allege an intersectional or dual motivation for his being fired. Instead, he is proceeding on entirely separate and alternate tracks, relying upon different employment statutes. He does not hint at which of his explanations for Ogihara's decision he prefers, unless the fact that his § 1981 claim is contained in his first count indicates a preference for his claim of race discrimination. The court will deal with each theory separately in the order he has presented them.

*The § 1981 claim*

DeVaughn has not demonstrated facts to make out a *prima facie* case of race discrimination, but, even if he has, Ogihara articulates a legitimate, non-discriminatory reason for the termination that has not been shown to be a pretext. Ogihara correctly maintains that no reasonable jury, on the undisputed facts, could return a verdict for DeVaughn on a claim of race discrimination. *See* Fed. R. Civ. P. 56(c).

In reviewing the § 1981 claim, the court uses the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rice-Lamar v. City of Ft. Lauderdale,* 232 F.3d 836, 843 n.11 (11th Cir. 2000) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981)). To present a *prima facie* case of race discrimination, a plaintiff is required to show: "(1) []he is a

6

member of a protected class; (2) []he was subjected to an adverse employment action; (3) h[is] employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) []he was qualified for the job or job benefit at issue." *Id.* at 842-43. In its motion and supporting brief, Ogihara assumes *arguendo* that DeVaughn has shown every element of a *prima facie* case save one, namely, that Ogihara treated similarly situated white employees more favorably than it treated DeVaughn.

DeVaughn concedes that he violated a company rule. Thus, in order to make out a *prima facie* case, he must show a disparity between the disciplinary measure imposed upon him and the disciplinary measure(s) imposed upon white employees who engaged in similar misconduct. *See Thomas v. Miami Veterans Med. Ctr.*, No. 07-14722, slip op. at 2 (11th Cir. 2008) (citing *Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir. 1989)). DeVaughn has shown no such disparity. He has not identified a white employee who engaged in misconduct similar to his. The Eleventh Circuit "require[s] that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). DeVaughn has not produced a white fellow employee who engaged in the admittedly serious misconduct of making a false statement to a superior.

DeVaughn's complaint points to two white employees, Webber and Burgess, and alleges that they, at various times, discarded parts to be destructed without actually destructing them, and, nevertheless, were not fired. However, DeVaughn fails to acknowledge the markedly different significance of the official reason for his termination, namely, the making of a false statement. Which is worse, creating a potentially defective part, or lying about it? DeVaughn does not contest that he violated the company rule against lying. Further, DeVaughn presents no evidence that could lead a reasonable jury to conclude that either Webber or Burgess made a false statement.[4] Thus, even if both Webber and Burgess committed the distinct rule violations claimed by DeVaughn, to compare those violations with the violation committed by DeVaughn would be to second guess the relative importance placed on workplace rules. Because DeVaughn has not identified a similarly situated employee who received a less severe sanction for similar misconduct, his § 1981 claim fails.

Even if DeVaughn had been able to make out a *prima facie* case of race discrimination, Ogihara says that he was terminated for a legitimate, non-discriminatory reason and that there is no proof that the reason was a pretext. Once a plaintiff has established a *prima facie* case and created an inference of discrimination on the part of the employer, under the *McDonnell Douglas* framework, to

---

[4] In fact, Ogihara's evidence reflects that neither of the two made a false statement, evidence that DeVaughn has not refuted.

eliminate the presumption, "the defendant need only to produce evidence that there is a legitimate, non-discriminatory reason for the challenged employment action." *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002). The Eleventh Circuit has emphasized that the defendant's burden at this stage is extremely light: "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).

Ogihara's articulated reason for terminating DeVaughn clearly was a legitimate response to an offense that, by rule, called for termination.[5] Whether Ogihara's decision to terminate DeVaughn was fair is not a matter for the court. Rather, "the sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Ogihara has adduced uncontradicted evidence to support its proffered reason. In light of the fact that DeVaughn has not responded to Ogihara's said proffer, and that the record lacks otherwise sufficient evidence for a reasonable factfinder to conclude that Ogihara's proffered reason is pretextual, Ogihara's motion for summary judgment on DeVaughn's § 1981 claim would be granted even if DeVaughn had made out a *prima facie* case.

---

[5] If DeVaughn disputes the fact that he violated a rule by making a false statement it is not apparent from the record.

*The FMLA Retaliation Claim*

DeVaughn's second count alleges that Ogihara retaliated against him for engaging in an activity protect by the FMLA. In order to establish a *prima facie* case of FMLA retaliation, DeVaughn, who has pointed to no direct or verbal evidence in support of this claim, must demonstrate that: "(1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two." *Bass v. Lockheed Martin Corp.*, No. 08-10549, slip op. at 3 (11th Cir. 2008). "[T]o succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206-07 (11th Cir. 2001). Giving DeVaughn the benefit of the doubt, he was engaging in statutorily protected conduct when he requested FMLA leave after he took his wife to the doctor on October 11, 2005. On October 18, 2005, he was denied FMLA leave "because the medical certification was incomplete." From the fact that the decision-makers do not deny that they were aware of the October 18 incident, it can be inferred that they were aware of it. The termination occurred on October 21, 2005, three days after the FMLA leave denial. This temporal proximity is enough to make out a *prima facie* case of causal connection. In *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F. 3d 1286 (11th Cir. 2006), the Eleventh

10

Circuit held:

> Close temporal proximity between protected conduct and an adverse employment action is generally "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). An exception to this rule applies where there is "unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct," *id*.

Without any more than the circumstantial evidence of a firing right after an attempt to take FMLA leave, it may be difficult for DeVaughn to convince a jury that Ogihara had a retaliatory motive. Nevertheless, the record reflects that DeVaughn engaged in protected activity and suffered an adverse employment action. The close temporal proximity forms a basis, if weak, upon which a jury could find the other essential element for FMLA retaliation, namely, causal connection.

## CONCLUSION

Based on the foregoing, Ogihara's motion for summary judgment will be granted in part and denied in part.

DONE this 26th day of September, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE